**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **THOMAS MOORE, # B-78448,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-1095-NJR** |
| | ) | |
| **TYLER D. JOHNSON, FRANK McSHANE,** | ) | |
| **R. ALLEN, NURSE KELLY,** | ) | |
| **M. CLARK, SGT. HOMYLA,** | ) | |
| **A. HARRIS, M. SVETLAND,** | ) | |
| **A. RODMAN, C/O McROBINSON,** | ) | |
| **C/O FERNANDEZ, LT. FURROW,** | ) | |
| **C/O BOWELS, NURSE HILL,** | ) | |
| **THOMAS A. SPILLER,** | ) | |
| **DEREK CLELAND, L. SHAH,** | ) | |
| **W. HECK, MARCUS A. MYERS,** | ) | |
| **and UNKNOWN PARTY (John Does 1-10),** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was confined at Pinckneyville Correctional Center ("Pinckneyville"). Plaintiff is serving sentences of ten years and eight years for two counts of attempted murder. He alleges that several Defendants conspired to inflict beatings on him and that he was denied medical treatment for his injuries. Further, he was subjected to punishment based on a false disciplinary report and denied due process by the hearing panel. This case is now before the Court for a preliminary merits review of the complaint pursuant to 28 U.S.C. § 1915A.

According to the complaint, on the evening of March 11, 2015, Defendant Johnson

stopped Plaintiff and asked him what was wrong with his eye (Doc. 1, pp. 5-6). Plaintiff has a disfigured left eye, and he assumed Defendant Johnson was commenting on that condition, as many guards have done to humiliate Plaintiff. Plaintiff responded that there was nothing to discuss. When Defendant Johnson continued his inquiry, Plaintiff realized he was in fact asking about a scar under Plaintiff's right eye. Plaintiff told Defendant Johnson that the injury to his right eye had occurred months ago. But Defendant Johnson did not believe this answer, and he insisted the right-eye injury resulted from a recent incident. Defendant Johnson took Plaintiff's identification card. Some ten minutes later, Defendant Johnson confronted Plaintiff in his cell about the issue. He became belligerent when Plaintiff continued to insist it was an old injury, finally calling Plaintiff a "lying nigger" and threatening to "fix [Plaintiff's] ass" (Doc. 1, p. 6).

A few minutes after Defendant Johnson left, Defendant McShane came to the cell, ordered Plaintiff to cuff up, and asked Plaintiff why he had spit on Defendant Johnson. Plaintiff denied spitting on Defendant Johnson but cooperated. Defendant Allen joined Defendant McShane in escorting Plaintiff out of the housing wing. Defendant Allen then grabbed the back of Plaintiff's head, bent him forward, and proceeded to beat Plaintiff's head, face, ears, and sides with his fists. He told Plaintiff that he was "going to die tonight. You don't spit on any officer of mine." (Doc 1, p. 7). Defendant McShane clamped Plaintiff's handcuffs so tightly that Plaintiff's wrists were cut and began to bleed profusely.

They took Plaintiff to the Health Care Unit, where they threw him into a room called the "naked-room" or "Boom-Boom room." Inside this room, Defendants Allen and McShane began to beat Plaintiff again, this time joined by four Unknown (John Doe) Defendant prison guards. During and after this beating, Defendant Kelly (a nurse) asked Plaintiff if he was all right. He responded that his nose was broken, his wrists were sliced open, and he was having chest pains.

Defendant Allen told Defendant Kelly that "[Plaintiff's] black ass don't get medical treatment" and ordered the nurse to leave (Doc. 1, p. 7). Defendant Kelly departed without trying to stop or report the beating, and he failed to give Plaintiff any medical treatment despite the obvious wounds on his face and wrists. Defendant Allen told Plaintiff he would kill him and his whole family if Plaintiff reported the beating to Internal Affairs.

Defendants Allen and McShane next dragged Plaintiff to segregation. They were met by Defendants Clark, Harris, Homyla, Svetland, Meracle,[1] Rodman, and McRobinson (all guards). Defendant Allen ordered them to beat Plaintiff too. They all began to hit and kick Plaintiff all over his body while they dragged him to the segregation cell, and they continued the attack after he was inside the cell. He was still handcuffed behind his back throughout this ordeal. Soon after this, Plaintiff was issued a false disciplinary report for spitting on Defendant Johnson.

At around 9:45 p.m. during the count, Plaintiff begged Defendants Harris and Meracle to get him a nurse. They refused to do so, with Defendant Harris stating that Plaintiff would never get treatment. Plaintiff alleges this was to ensure that no medical records would be produced to document his injuries.

After the guards' shift change, Plaintiff asked Defendant Fernandez to call a nurse, because he was in severe pain and was still bleeding profusely from both wrists and one knee. He had visible injuries on his head and face. Defendant Fernandez refused to call for medical assistance, claiming that the "nurses are busy" (Doc. 1, p. 9). The following day, Plaintiff asked several John Doe Defendant guards for medical attention. They told him to fill out a sick call request. Plaintiff submitted several of these, but he did not get a response.

Several days later, Plaintiff reported the "torture" and beating to Defendants Bowels and

---

[1] Plaintiff omitted Defendant Meracle's name from the case caption (Doc. 1, p. 1), thus the Clerk did not include him among the parties. He is included in the list of Defendants, however (Doc. 1, p. 3). The Clerk shall be directed to add Defendant Meracle as a party to the action.

Furrow (both of Internal Affairs) and asked for medical treatment. They said they could see that Plaintiff was injured, but because "there was an assault on staff," "that changes things" (Doc. 1, p. 9). They returned Plaintiff to his cell without getting any medical treatment for him.

Plaintiff was eventually seen by Defendant Nurse Hill, whom he told about his obvious injuries, including his broken nose, sliced wrists, cut knee, swollen head and eyes, and ongoing pain. She told Plaintiff she would talk to the doctor, but she did not examine him or render any treatment.

Plaintiff continued to ask prison staff for medical treatment, and he wrote several requests to Defendant Warden Spiller and to Internal Affairs. On March 26, 2015, Defendants Spiller and Cleland made rounds on Plaintiff's wing. Plaintiff informed them of the beating and begged for medical treatment, but they did nothing (Doc. 1, p. 10).

In April, Plaintiff saw Defendant Dr. Shah. *Id*. On an unspecified date that month, he still had visible injuries. Despite Plaintiff's request for treatment, Defendant Shah said he would only treat Plaintiff for his cholesterol. He refused to examine or document any of the injuries Plaintiff sustained in the beating.

Plaintiff was called to meet with Defendants Spiller and Cleland on April 20, 2015. Defendant Spiller told Plaintiff he had to stop writing complaints about the beating, and if he did not cease, "it will not go good for you." *Id*. He told Plaintiff he would "allow" him to see Defendant Dr. Shah. Plaintiff was then escorted to see the doctor.

Plaintiff told Defendant Shah that his injuries from the beating were getting worse and that he now had very little feeling in his fingers. Defendant Shah did not examine Plaintiff; he sent him back to his cell. On April 24, 2015, Plaintiff was taken to see Defendant Shah again. For the third time, Plaintiff described his injuries. The cuts on his wrists were still open and

bleeding. Defendant Shah responded that he did not want to hear about the beating. He again returned Plaintiff to his cell without any examination or treatment (Doc. 1, p. 11).

Plaintiff later discovered that after the initial March 11 confrontation about his eye injury, Defendant Johnson had told Defendants McShane and Allen that Plaintiff was a "troublemaker" and needed to "learn a lesson" (Doc. 1, p. 6). Defendant Allen then brought the other Defendant guards into the conspiracy to beat Plaintiff and cover up their actions (Doc. 1, pp. 6-7).

Plaintiff's disciplinary ticket over allegedly spitting on Defendant Johnson was heard on March 16, 2015, by Defendants Heck and Myers. They found Plaintiff guilty of staff assault and insolence, without interviewing any of Plaintiff's requested witnesses. Plaintiff does not describe what punishment was imposed on him, other than to say it involved segregation. At the time of this hearing, Plaintiff still had not received any medical treatment and had visible injuries. He asked Defendants Heck and Myers to get him treatment, but they refused (Doc. 1, p. 11).

On May 21, 2015, Plaintiff was transferred to Lawrence Correctional Center. While there, he has received medical treatment for the injuries inflicted in the beatings.

Plaintiff requests damages for Defendants' violation of his constitutional rights. In addition to his civil rights claims, he asserts a conspiracy claim under 42 U.S.C. § 1985, § 1986, and Illinois state tort common law (Doc. 1, p. 1).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable

person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Eighth Amendment excessive force claim against Defendants Allen, McShane, Clark, Harris, Homyla, Svetland, Meracle, Rodman, McRobinson, and the Unknown Defendants (John Does 1-4) for beating Plaintiff on March 22, 2015, and against Defendant Kelly for witnessing part of the beating and failing to intervene to stop or report it;

> **Count 2:** Claims under federal and state law for conspiracy to violate Plaintiff's civil rights by beating him and covering up the violations, against Defendants

Johnson, Allen, McShane, Clark, Harris, Homyla, Svetland, Meracle, Rodman, McRobinson, and the Unknown Defendants (John Does 1-4).

**Count 3:** Eighth Amendment deliberate indifference to medical needs claim against Defendants Allen, McShane, Clark, Harris, Homyla, Svetland, Meracle, Rodman, McRobinson, and the Unknown Defendants Guards (John Does 1-4), for failing to obtain medical treatment for Plaintiff after inflicting injuries on him;

**Count 4:** Eighth Amendment deliberate indifference to medical needs claim against Defendants Fernandez, Unknown Defendant Guards (John Does 5-10), Bowels, Furrow, Spiller, Cleland, Heck, and Myers, who refused to summon medical care for Plaintiff despite his visible injuries and requests for help;

**Count 5:** Eighth Amendment deliberate indifference to medical needs claim against medical provider Defendants Kelly, Hill, and Shah, who failed to examine or treat Plaintiff for his visible injuries and reported serious symptoms;

**Count 6:** Fourteenth Amendment claim against Defendants Johnson, Heck, and Myers, for depriving Plaintiff of a liberty interest without due process, based on a false disciplinary charge.

Plaintiff shall be allowed to proceed on the claims in Counts 1-5, as detailed below. Count 6 shall be dismissed without prejudice at this time for failure to state a claim upon which relief may be granted.

## Count 1 – Excessive Force and Failure to Intervene

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de

minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Plaintiff's complaint states a colorable claim against Defendants Allen, McShane, Clark, Harris, Homyla, Svetland, Meracle, Rodman, McRobinson, and the Unknown Defendants (John Does 1-4), for using excessive force against him on March 11, 2015, when Defendant McShane tightened his handcuffs to the point of cutting his wrists and all participated in beating Plaintiff repeatedly.

Additionally, a prison official who witnesses other officers applying excessive force to an inmate yet fails to take any action to stop or report the abuse may be equally liable in a civil rights action. *See Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *see also Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Archie v. City of Racine*, 826 F.2d 480, 491 (7th Cir. 1987). Therefore, Plaintiff also may pursue his claim in **Count 1** against Defendant Kelly, the nurse who did nothing to assist him after she witnessed some of the above Defendants beating him and saw his injuries.

## Count 2 – Conspiracy

Civil conspiracy claims are cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under § 1983). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date . . . ." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002). Here, the complaint alleges that Defendant Johnson initiated the plan to "teach Plaintiff a lesson" by recruiting Defendants McShane and Allen to physically assault Plaintiff after claiming that

Plaintiff had spit on him. This amounted to a conspiracy to violate Plaintiff's Eighth Amendment rights. Defendant Allen then became the ringleader, directing the other officers to continue the beatings and preventing Plaintiff from obtaining medical treatment. Defendants Harris and Meracle, and perhaps other officers, perpetuated the plan by continuing to deny Plaintiff's requests for medical care. These allegations are sufficient to allow Plaintiff to go forward with his conspiracy claim under § 1983.

Similarly, Plaintiff may go forward at this stage with his state-law claim that Defendants Johnson, Allen, McShane, Clark, Harris, Homyla, Svetland, Meracle, Rodman, McRobinson, and the Unknown Defendants (John Does 1-4) conspired to assault him. The Seventh Circuit has observed that:

> To succeed in a claim of civil conspiracy under Illinois law, the plaintiffs must eventually establish: (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff. *See McClure v. Owens Corning Fiberglas Corp.,* 188 Ill .2d 102, 241 Ill. Dec. 787, 720 N.E.2d 242, 258 (1999). "The agreement is a necessary and important element of this cause of action." *Id.* (internal quotations omitted).

*Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). Plaintiff's complaint satisfies these pleading requirements.

Plaintiff's conspiracy claims pursuant to 42 U.S.C. § 1985(3) and § 1986, however, shall be dismissed without prejudice for failure to state a claim upon which relief may be granted. Section 1985(3) prohibits a conspiracy to deprive another of equal protection under the law, if the conspiracy is motivated by racial or other class-based discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). The racial epithets and comments made by Defendant Allen during the abuse of Plaintiff indicate that he was biased against Plaintiff because of Plaintiff's race. But the facts related by Plaintiff

indicate that Defendant Johnson initiated the conspiracy to assault Plaintiff not because Plaintiff is African-American (although he did call Plaintiff a "lying nigger"), but because of Plaintiff's actions–he refused to answer Defendant Johnson's questions to his satisfaction, was "insolent," and allegedly spit on him. Taken together, these allegations do not support a § 1985 claim.

Further, under the intracorporate conspiracy doctrine, a § 1985 conspiracy claim "cannot exist solely between members of the same entity." *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999). Defendants are members of the same entity, the Illinois Department of Corrections ("IDOC"), and they were all working in the IDOC's interest. This mitigates against a § 1985 conspiracy suit. *See id. See also Wright v. Ill. Dep't of Children and Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994).[2] Further, "the function of a conspiracy claim under 42 U.S.C. § 1985(3) is to 'permit recovery from a private actor who has conspired with state actors.'" *Turley v. Rednour*, 729 F.3d 645, 649 n.2 (7th Cir. 2013) (quoting *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)).

Finally, when a plaintiff fails to state a § 1985 claim, his § 1986 claim fails as well. *See Smith v. Gomez*, 550 F.3d 613, 617-618 (7th Cir. 2008); *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (7th Cir. 1992).

To summarize, Plaintiff may proceed in **Count 2** against Defendants Johnson, Allen, McShane, Clark, Harris, Homyla, Svetland, Meracle, Rodman, McRobinson, and the Unknown Defendants (John Does 1-4) on his civil conspiracy claim brought pursuant to §1983, as well as his conspiracy claim under Illinois state law.

---

[2] While *Wright* focused on corporate managers, nothing in its reasoning precludes application of this doctrine to supervisors and subordinates in a government entity, as long as all are working in the entity's interest. *Id.* at 633.

## Counts 3 and 4 – Deliberate Indifference to Serious Medical Needs - Non-Medical Defendants

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that (1) he suffered from an objectively serious medical condition; and (2) the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).

Although the Defendant Officers who allegedly assaulted Plaintiff are not medical providers, the Seventh Circuit has held that a guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). Thus Defendants Allen, McShane, Clark, Harris, Homyla, Svetland, Meracle, Rodman, McRobinson, and the Unknown Defendants Guards (John Does 1-4), who perpetrated the assault and then allegedly prevented Plaintiff from getting medical attention for his injuries, may be found liable for deliberate indifference to Plaintiff's need for medical care. **Count 3** shall proceed against these Defendants.

Likewise, Plaintiff has stated a cognizable deliberate indifference claim against the officials who refused his requests to summon medical assistance for him in the days and weeks

following the assault. Plaintiff may thus also proceed in **Count 4** against Defendants Fernandez, Unknown Defendant Guards (John Does 5-10), Bowels, Furrow, Spiller, Cleland, Heck, and Myers, at this stage of the litigation.

## Count 5 – Deliberate Indifference to Serious Medical Needs – Medical Providers

Defendant Nurses Kelly and Hill and Defendant Dr. Shah each observed Plaintiff's injuries and heard him relate his serious symptoms resulting from the beatings described above, however, they delayed and/or denied him any treatment for these injuries or his ongoing pain. Plaintiff's deliberate indifference claims against these medical providers also merits further review, and **Count 5** shall proceed against Defendants Kelly, Hill, and Shah.

## Dismissal of Count 6 – Deprivation of a Liberty Interest Without Due Process

Plaintiff bases this claim on his allegations that the disciplinary ticket (presumably issued by Defendant Johnson) over the alleged spitting incident was false and that Defendants Heck and Myers found him guilty of insolence and staff assault without having interviewed Plaintiff's witnesses.

Plaintiff does not say what punishment he incurred, other than an unspecified confinement in disciplinary segregation. He does not include a copy of the adjustment committee's decision or any grievance he may have filed over the disciplinary action. The complaint does not say whether the discipline imposed included any loss of good conduct credits, thus the Court cannot discern whether the claim might be affected by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Plaintiff's exhibits include documents from Lawrence which indicate he was held in segregation for approximately six months (from March 11 to September 11, 2015) (Doc. 1, pp. 30-32). As currently pled, the complaint fails to state a claim upon which relief may be granted for deprivation of a liberty interest without due process,

so Count 6 shall be dismissed without prejudice.

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed). The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation. Due process also requires that the disciplinary decision have at least minimal evidentiary support. *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) (disciplinary decision must be supported by "some evidence"); *see also Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends"). The account of the reporting officer may satisfy this requirement.

Here, of course, Plaintiff claims that Defendants Heck and Myers did not follow the due process guidelines set forth in *Wolff*, because they failed to call or interview his witnesses. According to Plaintiff, nothing was stated regarding any security concerns or other possible reasons for this omission.

Under certain limited circumstances, an inmate who is punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). But the complaint here does not

include factual allegations to suggest that these circumstances are present.

An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner*, 128 F.3d at 1175.

The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

It appears that Plaintiff was confined in disciplinary segregation for approximately six months. Based on Plaintiff's conviction information on the website of the Illinois Department of

Corrections, it appears that Plaintiff is serving his sentences consecutively, for a total incarceration of 18 years (less good conduct credits). Illinois Department of Corrections, Offender Search page, http://www.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (Last visited Oct. 26, 2015). A six-month period of punitive segregation, in the context of an 18-year sentence, might be sufficiently long to trigger an inquiry into the conditions faced by Plaintiff during that time. Plaintiff's complaint is entirely silent, however, as to whether the conditions of his confinement in segregation differed in any way from the prevailing conditions in administrative segregation. The fact that Plaintiff obtained medical treatment at Lawrence while he served the final months of his segregation term suggests that conditions there may have been better than what he experienced at Pinckneyville.

Because the complaint does not suggest that Plaintiff was subjected to any "atypical or significant hardship" as a result of his confinement in disciplinary segregation, **Count 6** shall be dismissed at this time without prejudice. Should facts exist that would support a claim for deprivation of a liberty interest without due process, Plaintiff may re-plead this claim in an amended complaint, in accordance with the scheduling order set by the United States Magistrate Judge.

**<u>Pending Motions</u>**

Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 2) shall be addressed in a separate order. The motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration.

The motion for service of process at government expense (Doc. 7) is **GRANTED.** Service shall be ordered below.

**Disposition**

The Clerk is **DIRECTED** to add "S. Meracle" as a party Defendant.

**COUNT 6** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **JOHNSON, McSHANE, ALLEN, KELLY, CLARK, HOMYLA, HARRIS, SVETLAND, RODMAN, McROBINSON, FERNANDEZ, FURROW, BOWELS, HILL, SPILLER, CLELAND, SHAH, HECK, MYERS,** and **MERACLE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address

shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court,

who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  October 29, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**